UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JOHN LAMBERT,<br><br>        Plaintiff,<br><br>        v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>        Defendant.<br>_____ | Case No. CV 16-02763 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff seeks reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2-4]. In a September 12, 2014 written hearing decision that constitutes the Commissioner's final decision, an Administrative Law Judge ("ALJ") found that plaintiff had severe impairments consisting of depressive disorder, anxiety, and a history of dyslexia. The ALJ determined that plaintiff's impairments did not meet or equal a listed impairment, and that plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels with nonexertional limitations restricting him to simple routine tasks requiring only incidental contact with the

public and minimal interaction with coworkers, meaning that plaintiff could work side by side or alone, but that verbal collaboration should not be the primary component of the job. [Administrative Record ("AR") 29-30]. The ALJ found that plaintiff has no past relevant work, but that his RFC did not preclude him from performing jobs that exist in significant numbers in the national economy. Accordingly, the ALJ found plaintiff not disabled at any time from March 1, 2003, his alleged onset date, through the date of the ALJ's decision. [AR 32-34].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ committed reversible error in assessing the opinions of plaintiff's treating psychiatrist, Michael Turek, M.D., of Ventura County Behavioral Health ("VCBH"). [See JS 3-8].

Dr. Turek completed two mental function assessment forms at the Commissioner's request, one in June 2012 and another in November 2012. [AR 321-324, 346-351]. Dr. Turek said that he began treating plaintiff in March 2012, and that he saw plaintiff one to two months or as needed. Plaintiff's diagnoses were panic disorder with agoraphobia and social phobia. [AR 321, 346-347]. Dr. Turek identified numerous signs and symptoms supporting his diagnoses, including, but not limited to, nervous and anxious behavior;

below-average intelligence based on plaintiff's history of special education classes in high school and failure to graduate; fearful, anxious mood; blunted affect; thoughts of suicide; generalized persistent anxiety; feelings of guilt or worthlessness; difficulty thinking or concentrating; emotional withdrawal and isolation; intense and unstable interpersonal relationships; impulsive and damaging behavior; sleep disturbance; and recurrent severe panic attacks. [AR 321-322, 348]. Dr. Turek reported that he had prescribed medications for plaintiff's depression and anxiety, including Prozac, Xanax, Inderal, and Effexor, but that as of November 2012, "[t]he right combination has not been found as [plaintiff's] depression worsens and [he] is now having suicidal thoughts." [AR 321, 347]. As of November 2012, Dr. Turek opined that plaintiff was markedly or extremely limited in all of the work-related functional abilities rated. [AR 346, 349-350]. He explained that plaintiff had difficulty being around or interacting with others, exhibited poor social skills, suffered from a learning disability, had difficulty following verbal and written instructions, experienced severe panic attacks when out in public, was unable to maintain focus and concentration, was easily distracted, was unable to deal with work pressures and "becomes agitated," and could not (and did not) handle his own funds. [AR 323, 346]. Dr. Turek said that plaintiff required ongoing psychiatric treatment for symptoms of depression and anxiety, and that without treatment plaintiff faced an increased risk of decompensation and hospitalization. [AR 323, 347].

In general, "[t]he opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant." Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); see Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). A treating physician's opinion is entitled to greater weight than those of examining or non-examining physicians because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . . ." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) and citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188); see 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902, 416.927(c)(2). An examining physician's opinion, in turn, generally is afforded more weight than a non-examining physician's opinion. Orn, 495 F.3d at 631.

When a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion

must be given controlling weight. Orn, 495 F.3d at 631-632; Edlund, 253 F.3d at 1157; SSR 96-2p, 1996 WL 374188 at *1-2. A treating physician's opinion that is contradicted by substantial evidence in the record, such as the opinion of an examining physician based on independent clinical findings, is not entitled to controlling weight; however, that opinion is "still entitled to deference" and should be evaluated using the factors set forth in the Commissioner's regulations. Orn, 495 F.3d at 632 (quoting SSR 96-2p at 4); see Edlund, 253 F.3d at 1157; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).[1]

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

The ALJ rejected Dr. Turek's conclusions on the ground that they "are eroded by the sporadic treatment history, and [by] the inconsistencies between the opinions and the progress notes showing that the claimant responded well to treatment when consistent." [AR 32]. Those reasons are not specific, legitimate, and supported by substantial evidence in the record.

The ALJ characterized plaintiff's treatment history as "sporadic" because plaintiff "has not availed himself [of] consistent, specialized treatment options, such as therapy or counseling in combination with medication," and because a July 2014 note stated that plaintiff was only seen one time "in the mental health department at Clinicas," which "suggests either that [plaintiff's] symptoms are not as bothersome as alleged, or a lack of motivation to improve his symptoms so that he can work." [AR 32]. Plaintiff's treatment records indicate, however, that he sought and obtained mental health treatment on a reasonably

---

[1] Those factors include the length of the treatment relationship, the frequency of examination by the treating physician, and the nature and extent of the treatment relationship between the patient and the treating physician. Additional factors relevant to evaluating any medical opinion include the degree to which the opinion is supported by other evidence in the record, the "quality of the explanation provided" by the physician, the consistency of the medical opinion with the record as a whole, the physician's speciality, and "[o]ther factors," such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. Orn, 495 F.3d at 631; 20 C.F.R. §§ 404 .1527(c)(2)-(6), 416.927(c)(2)-(6).

4

consistent basis for several years even before starting treatment with Dr. Turek at age 29. Plaintiff received counseling services as part of his Individualized Education Program in high school, when he was diagnosed with a learning disability and emotional problems, resulting in his placement in special education classes. [See AR 63, 389, 396]. In 2003, when plaintiff was 20 years old, Thomas Phelps, M.D., diagnosed anxiety/depressive disorder and prescribed anti-depressant medication. [AR 286, 292]. Between June 2008 and August 2011, Dr. Phelps continued to diagnose and treat plaintiff for depression, anxiety, and hypothyroidism. [AR 404-412]. In June 2008, Dr. Phelps noted that plaintiff had a long history of depression, was largely home-bound secondary to depression, was embarrassed about his obesity, and had been "on Paxil in the past and several other neurotransmitters with only partial relief of his symptoms. He has no insurance." [AR 411]. Dr. Phelps supplied plaintiff with samples of the anti-depressant medications Pristiq and Lexapro for extended periods of time; after noting that samples were no longer available, he switched plaintiff to Prozac, which was less expensive. [See AR 293, 408-410]. In July 2008, Dr. Phelps noted that plaintiff was "somewhat improved" on Prestiq and "does not seem as depressed." [AR 410]. In October 2008, Dr. Phelps noted that plaintiff had lost over 30 pounds on a weight loss medication (phentermine) and that his depression was "considerably improved on Prestiq." [AR 409]. Dr. Phelps agreed to continue prescribing phentermine. [AR 289]. Plaintiff had regained some of that weight by May 2010, regained all of it by November 2010, and weighed even more by August 2011. [AR 404-408]. Dr. Phelps continued to diagnose plaintiff with depression and anxiety. [AR 407-408]. After plaintiff requested a note excusing him from jury duty in November 2010, Dr. Phelps wrote that he and plaintiff had a "long conversation about his panic disorder, social anxiety disorder and his inability to be in a closed space with any other people and how this impacts on his life. He is not 27. He doesn't leave the house sometimes for weeks on end." [AR 406]. Dr. Phelps diagnosed plaintiff with depression and with "worsening panic disorder with elements of agoraphobia" and started plaintiff on Xanax for panic disorder. [AR 406-407]. Dr. Phelps wrote a jury excuse letter stating that plaintiff had been his patient for over a decade and

> suffers from severe panic disorder and agoraphobia. He is also being treated for moderately severe depression. [He] finds it very difficult to function outside of his home even for short periods of time. He finds that being in a crowded room with multiple other persons induces severe panic, which he is unable to tolerate.

[AR 286].

During a follow-up visit in August 2011, Dr. Phelps noted that plaintiff had gained weight. His diagnoses were marked obesity, depressive disorder, panic disorder, and hypothyroidism. [AR 404]. Dr. Phelps continued plaintiff on Prozac and Xanax. [AR 404].

In December 2011, about four months after last seeing Dr. Phelps, plaintiff presented to Alexander Oparin, M.D., at the Clinicas Del Camino Real clinic ("Clinicas") with complaints of anxiety. [AR 337-339]. Plaintiff, who was 29 years old, gave a subjective history of depressed mood, difficulty concentrating, excessive worry, feelings of guilt, suicidal thoughts, compulsive thoughts, sleep difficulties, diminished interest or pleasure, fatigue, hallucinations, loss of appetite, paranoia, poor judgment, restlessness, social anxiety, and weight gain. [AR 337]. Dr. Oparin said that plaintiff's "risk factors include childhood abuse or neglect." [AR 337]. His diagnosis was "depression with anxiety," which was not controlled. Plaintiff was already taking Prozac prescribed by Dr. Phelps; Dr. Oparin increased the dosage. [AR 338, ]. Plaintiff returned to Dr. Oparin for follow-up in January 2012 and February 2012 reporting that he was "less moody, more active" on the increased dose of Prozac, but he still complained of depressed mood, mood swings, and fatigue. [AR 331, 334]. Dr. Oparin changed plaintiff's diagnosis to major depressive affective disorder, recurrent episodes. [AR 328, 331, 334]. In May 2012, Dr. Oparin noted that plaintiff was seeing a psychiatrist. [AR 328].

In a May 2012 letter responding to a Department of Social Services records request, licensed clinical social worker ("LCSW") Lillian Goldfarb stated that she conducted an initial intake assessment of plaintiff at Clinicas on January 17, 2012, and that plaintiff had diagnoses of recurrent, severe major depressive disorder and panic disorder without agoraphobia. [AR 327]. Ms. Goldfarb added that after plaintiff's initial intake, she referred him to VCBH "for further psychological treatment." [AR 327]. The ALJ cited a second letter from another LCSW at Clinicas dated July 23, 2014 stating that plaintiff had been seen by Ms. Goldfarb on January 17, 2012. The July 2014 letter did not mention that Clinicas had referred plaintiff to VCBH for further psychological treatment at that time. [AR 445].

Plaintiff underwent an initial intake assessment by a psychologist and a physician at VCBH in February 2012. [AR 391-401]. The assessment was comprised of an extensive, detailed history and a mental status examination. Plaintiff's psychiatric diagnoses were social phobia and dysthymic disorder, with rule

6

out diagnoses of generalized anxiety disorder, avoidance personality disorder, and learning disability. In March 2012, Dr. Turek performed an initial psychiatric evaluation consisting of a history and mental status examination. [AR 389-390]. Dr. Turek diagnosed panic disorder with agoraphobia and social anxiety phobia. He continued plaintiff on Prozac and Xanax and added propranolol (also known by the brand name Inderal) for anxiety. [AR 56, 390]. Between March 2012 and March 2013, plaintiff saw Dr. Turek monthly or bi-monthly for medication checks that included a review of symptoms and a mental status examination. Dr. Turek listed plaintiff's diagnoses as major depressive disorder with either panic disorder or anxiety disorder. [AR 377-388]. Dr. Turek varied plaintiff's psychiatric medications and their dosage based on plaintiff's therapeutic response, prescribing Prozac, Xanax, Inderal, Effexor, and Klonopin. Dr. Turek's progress notes consistently indicate that plaintiff was compliant with treatment yet exhibited "functional impairments" in social functioning, activities of daily living, and other areas due to problems with "mood," "panic," and "anxiety." Abnormal mental status findings include depressed mood and blunted affect. [AR 377-388].

During the August 2014 hearing, plaintiff testified by telephone that he had seen Dr. Turek for about a year and a half, and that he had requested therapy in addition to his psychiatric medication visits, but that the clinic told him it was a "slow process" and gave him other "excuses" for not granting his request. [AR 53]. Dr. Turek's March 2013 progress note corroborates plaintiff's testimony that he asked for one-on-one therapy, and Dr. Turek indicated that he would refer plaintiff for therapy. [AR 380]. Plaintiff testified that he stopped going to Dr. Turek because "situations came up where I couldn't get down to" see him, but that he was seeing a new primary care doctor at Clinicas, Dr. Cheng, who was trying to get plaintiff seen by a therapist. [AR 53-54]. Dr. Cheng also wrote a letter requesting that plaintiff be excused from testifying in person due to "medical conditions of agoraphobia and severe social anxiety . . . ." [AR 473]. Plaintiff's mother testified that plaintiff stopped seeing Dr. Turek because he was pushing plaintiff "to go into a social group," so plaintiff started having more panic attacks just going to the doctor, then stopped taking his mediation consistently for awhile. [AR 61]. Plaintiff's mother testified that they tried to get plaintiff back in to see Dr. Turek but learned that Dr. Turek "went on medical disability." [AR 61].

Given plaintiff's history of treatment for depression, anxiety, and panic disorder over a period of several years with Dr. Phelps and Dr. Oparin, as well as plaintiff's nine visits to Dr. Turek during the course of a year, the ALJ's conclusion that plaintiff's treatment history was "sporadic" and undermined Dr. Turek's opinion is not specific, legitimate, or supported by substantial evidence in the record. The ALJ appears to have discounted the significance of plaintiff's mental health treatment because he did not undergo talk therapy, but "just talk[ed] with [Dr. Turek] when his medications were reviewed." [AR 31]. The undisputed evidence indicates that plaintiff wanted individual therapy and that Dr. Turek agreed to refer him. Since plaintiff utilized a county mental health clinic, he was not realistically in a position to demand therapy, even if referred by his treating psychiatrist. The fact that plaintiff was not provided therapy for reasons that are unclear from the record is not a legitimate reason for rejecting Dr. Turek's treating source opinion, which was based on his own clinical findings, including a review of symptoms and mental status examination conducted during each visit with plaintiff. The ALJ also drew an adverse inference about plaintiff's treatment history from the July 2014 Clinicas letter stating that plaintiff was seen only once in the mental health department there, but that negative inference was unwarranted in view of the undisputed evidence that Clinicas referred plaintiff to VCBH for further treatment after conducting an initial assessment. [See AR 31-32, 327, 445, 377-401].

The other reason given by the ALJ for rejecting Dr. Turek's opinion was "inconsistencies between [his] opinions and the progress notes showing that the claimant responded well to treatment when consistent." [AR 32]. The ALJ did not identify any inconsistencies between Dr. Turek's opinion and his progress notes. She did, however, cite to progress notes from Dr. Oparin dated January 12, 2012 and February 9, 2012 stating that plaintiff reported that an increased dose of Prozac was "helping," that his depression had "improved" and that he felt "much better," "less moody," and "more active" on the higher dose. [AR 331-336]. Those two progress notes do not carry the weight the ALJ ascribed to them. For one thing, they do not indicate that plaintiff's symptoms were in total remission, even during the brief period between January 12, 2012 and February 9, 2012. Plaintiff's examination was still positive for symptoms of depression and anxiety. He still had a "chronic problem" diagnosed as major depressive affective disorder, recurrent episodes. He "[s]till feels a lot of mood swings." [AR 331-332, 334]. Moreover, Dr. Oparin is not a psychiatrist or psychologist. When plaintiff underwent detailed intake assessments

performed by mental health specialists at Clinicas on February 23, 2012 and by Dr. Turek on March 19, 2012 [AR 389-401], those clinicians documented multiple signs and symptoms of depression and anxiety and gave plaintiff diagnoses of social anxiety phobia, panic disorder with agoraphobia, and (by the Clinicas providers) dysthymic disorder. [AR 390, 389-401]. Dr. Turek consistently and repeatedly diagnosed plaintiff with major depressive disorder with either panic disorder or anxiety disorder. [AR 377-388]. See Smolen, 80 F.3d at 1285 (explaining that the opinion of a specialist about medical issues related to his or her area of specialization are given more weight than the opinion of a nonspecialist). The ALJ erred in isolating and taking out of context a small quantum of evidence of partial improvement in plaintiff's depression to discredit Dr. Turek's treating source opinion. As the Ninth Circuit has explained,

> [c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working. Reports of "improvement" in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms. They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (footnote omitted) (citing Holohan v. Massanari, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws. That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace."); Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1200–1201 (9th Cir. 2008) ("Nor are the references in [a doctor's] notes that [the claimant's] anxiety and depression were 'improving' sufficient to undermine the repeated diagnosis of those conditions, or [another doctor's] more detailed report."); Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) ("We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that [the claimant] was 'doing well,' because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity.").

The ALJ also mentioned "marked improvement in [plaintiff's] mental impairment during a period of weight loss," citing Dr. Phelps's treatment records indicating that plaintiff's depression improved when he lost weight temporarily while taking phentermine. [AR 404-410]. Although plaintiff's testimony and medical records support the conclusion that plaintiff's obesity contributed to his depression and social anxiety, the record does not support the inference that plaintiff's weight was the sole or primary cause of his mental impairments, as opposed to a symptom or effect of his underlying mental impairments. [See, e.g., AR 389-401, 410]. Plaintiff's mother testified that his weight problems started "in high school mostly" [AR 63], that is, at around the same time his mental and emotional problems were diagnosed when he was evaluated for special education placement. [AR 63].

Moreover, even though Dr. Phelps advised plaintiff to lose weight, the ALJ cannot rely on plaintiff's failure to lose weight to deny benefits absent a factual finding that plaintiff's obesity was "reasonably remediable." See Dodrill v. Shalala, 12 F.3d 915, 919 (1993) (holding that an ALJ cannot simply assume that obesity is a remediable condition and discount its effects that basis, but instead must "examine the medical conditions and personal factors that bear on whether [the claimant] can reasonably remedy her obesity" and make an factual finding that the claimant's obesity was "reasonably remediable; if it was not, [the ALJ] must consider her obesity as a factor contributing to her disability and weigh the combination of her impairments accordingly") (internal quotation marks, alteration, and citations omitted); see also Hammock v. Bowen, 879 F.2d 498, 503-504 (9th Cir. 1989) (agreeing with the Fifth Circuit's observation "that while a claimant's impairments can be improved by simply following a doctor's orders to lose weight, losing weight is a task which is not equivalent to taking pills or following a prescription")(citing Scott v. Heckler, 770 F.2d 482, 486 (5th Cir. 1985)). Neither Dr. Phelps nor Dr. Turek suggested that plaintiff's obesity was reasonably remediable, and neither of those doctors relied on plaintiff's failure to lose weight to reject plaintiff's signs and symptoms or to discount the severity of plaintiff's mental impairment. Therefore, evidence that plaintiff exhibited some improvement in his mental symptoms when he lost weight did not provide a legitimate reason to reject Dr. Turek's opinion.

Since there is no consultative psychological or psychiatric examination in the record, the ALJ apparently relied on the August 2012 and May 2013 non-examining state agency medical opinions (which she did not explicitly mention) to formulate her RFC finding. [See AR 71-136]. Under the Commissioner's

own regulations, the relevant factors favor giving Dr. Turek's opinion more weight than a contrary non-treating source opinion. Dr. Turek was a specialist who had an ongoing treatment relationship with plaintiff of about a year; saw plaintiff relatively frequently during that period; reviewed plaintiff's symptoms, response to treatment, and mental status during each visit; documented his clinical findings; identified signs and symptoms supporting the opinions he rendered on the assessment forms; and noted signs, symptoms, and diagnoses that were consistent with those noted by Dr. Phelps and Dr. Oparin, both treating sources. Since the ALJ failed to articulate legally sufficient reasons for rejecting Dr. Turek's treating source opinion, and since that opinion was supported by the record and consistent with other substantial evidence in the record, the ALJ committed reversible legal error in failing to give Dr. Turek's opinion controlling weight. See 20 C.F.R. §§ 404 .1527(c)(2)-(6), 416.927(c)(2)-(6).

**Remedy**

A district court may "revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing[.]"Treichler v. Comm'r of Soc., Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting 42 U.S.C. § 405(g)). As the Ninth Circuit has explained, however,

> the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. Our case law precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met. The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.

> If the district court does determine that the record has been fully developed, and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy, and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony. In particular, we may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.

Dominguez v. Colvin, 808 F.3d 403, 407–408 (9th Cir. 2015) (internal quotation marks, citations, and brackets omitted).

Although the ALJ committed legal error in failing to give Dr. Turek's opinion controlling weight, there are outstanding issues that must be resolved. On remand, the Commissioner shall direct the ALJ to credit Dr. Turek's opinion as true and to conduct a supplemental hearing for the purpose of: (1) augmenting and updating the medical record; (2) reevaluating the other treating source evidence in the record in light of Dr. Turek's credited-as-true opinion, including the diagnoses and opinions of Dr. Phelps and Dr. Cheng; (3) reevaluating the credibility of the testimony from plaintiff and the lay witnesses in light of Dr. Turek's credited-as-true medical opinion; (4) eliciting vocational expert testimony regarding the effect of the limitations described by Dr. Turek on plaintiff's ability to perform alternative work; and (5) eliciting medical expert testimony regarding the date of onset, and the duration, of any period of disability established by Dr. Turek's credited-as-true opinion. The Commissioner also shall direct the ALJ to issue

a new written hearing decision containing appropriate findings.[2]

**Conclusion**

For the reasons stated above, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

May 24, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge

---

[2] This disposition makes it unnecessary to consider plaintiff's remaining contentions.